COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bumgardner and Lemons


RUTH C. DALE

v.    Record No. 2752-98-3

VIRGINIA RETIREMENT SYSTEM

LACY POTTER-MEADOWS
                                        MEMORANDUM OPINION[*]
v.    Record No. 2756-98-3                  PER CURIAM
                                          JUNE 22, 1999
VIRGINIA RETIREMENT SYSTEM

BARBARA C. McCLANAHAN

v.    Record No. 2757-98-3

VIRGINIA RETIREMENT SYSTEM


            FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
                     Keary R. Williams, Judge

            (John M. Lamie; Browning, Lamie & Sharp,
            P.C., on briefs), for appellants.

            (Mark L. Earley, Attorney General; Michael K.
            Jackson, Senior Assistant Attorney General;
            James W. Osborne, Assistant Attorney General,
            on briefs), for appellee.


     Barbara C. McClanahan (McClanahan), Ruth C. Dale (Dale), and

Lacy Potter-Meadows (Potter-Meadows) appeal orders of the trial

court affirming decisions by the Virginia Retirement System (VRS)

denying their claims for permanent disability retirement.

---

     [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

McClanahan, Dale, and Potter-Meadows contend that (1) the trial court erred in finding that there was substantial evidence to support VRS's denial of benefits on the ground that they failed to prove that their disability was "likely to be permanent"; and (2) Code § 51.1-156 is vague because it does not provide adequate standards to guide the determination of whether a person is "permanently" impaired, and, thereby, unconstitutionally delegates to the Medical Review Board and private physicians the ability to determine arbitrarily whether such person is permanently impaired. Upon reviewing the records and the briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the trial court's decisions. See Rule 5A:27.

I.

Standard of Review

"The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court." Code § 9-6.14:17. VRS is required to use a Medical Review Board ("the Board") to certify that a claimant's disability "is likely to be permanent." Code § 51.1-156(E)(ii). Our review of this determination asks only whether there was substantial evidence in the agency record to support the holding of the administrative agency. See Code § 9-6.14:17. "The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a

- 2 -

conclusion.'"  Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (citation omitted).

In accordance with well established principles, we view the evidence in the light most favorable to the prevailing party below, VRS in this instance.  See R.G Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

## McClanahan

McClanahan worked as a mineral license bookkeeper for Buchanan County for eleven years, last working on November 27, 1993.  McClanahan's job duties required that she maintain all mineral cards and updates, generate correspondence, wait on the public, answer telephones, and perform other general office tasks.

On April 6, 1994, McClanahan, then age 44, filed an application with VRS seeking permanent disability retirement benefits.  In her application, McClanahan alleged that she could no longer perform her job due to a nervous condition, heart problems, high blood pressure, and herniated discs.  McClanahan had undergone back surgery in March 1993, was hospitalized for a heart attack in November 1993, and had undergone heart by-pass surgery in December 1993.

The Board reviewed medical records of Drs. Christopher J. Kennedy, Thomas M. Bulle, Richard A. Feit, and J.P. Sutherland, Jr.  Those records revealed that McClanahan suffered from heart disease with myocardial infarction.  In December 1993, she

- 3 -

underwent a revascularization.  Both cardiologists, Drs. Bulle and Kennedy, suggested that McClanahan undergo pulmonary function tests and blood gases.  The pulmonary function tests were not performed, and the blood gases were normal.

In May 1994, Dr. Bulle noted that McClanahan had "some perceived difficulty breathing," but he found normal lung fields and heart size with no "cardiac basis for her dyspnea."  Dr. Bulle also noted that "based on her chest x-ray and clinic exam, I did not see any primary pulmonary process either."

By letter dated October 27, 1994, the Board denied McClanahan's application for permanent disability benefits. McClanahan appealed that decision.

On appeal, McClanahan submitted additional medical evidence including a psychological evaluation from Dr. L. Andrew Steward, a licensed psychologist, dated September 29, 1994, and a physical capabilities evaluation form completed by Dr. Steward.  The Board also reviewed Dr. Sutherland's office notes.  Dr. Steward diagnosed McClanahan as suffering from major severe depression, recurrent, and a generalized anxiety disorder, consistent with chronic pain syndrome due to a combination of major physical problems, including a heart attack and back surgery.  Dr. Steward opined that "[t]he combination and severity of factors do make her functionally disabled to work, and she will most likely be so indefinitely."

On March 14, 1995, Dr. Eric Moffett, a psychiatrist, evaluated McClanahan at VRS's request. Dr. Moffett reviewed McClanahan's medical records and her job description. Dr. Moffett diagnosed McClanahan as suffering from mild major depression, single episode. Dr. Moffett opined that McClanahan's depression would readily respond to medication. Dr. Moffett recommended that McClanahan receive appropriate psychotropic medication treatment from a psychiatrist. Dr. Moffett opined as follows:

> Given that treatment, it would be my expectation that she would return to full psychological functioning within four to six months. I see no reason she would be permanently disabled from performing her job duties at that time. I also feel that returning to work would help with her issues of self-esteem and self-confidence. Therefore, I believe she should return to work for her psychological well being.

By letter dated April 12, 1995, the Board again denied McClanahan's application. The Board noted that it had previously found that McClanahan was not disabled by her heart condition. The Board accepted Dr. Moffett's opinion that McClanahan was not permanently disabled from a psychiatric standpoint. McClanahan appealed that decision.

On June 23, 1995, the Social Security Administration awarded benefits to McClanahan for a period of disability beginning on November 27, 1993 through at least the date of the decision.

On August 31, 1995, R. Louis Harrison, Jr., Esquire, hearing officer for VRS, conducted a fact finding hearing. At that

hearing, McClanahan described her heart attack and her back surgery. McClanahan described continuing symptoms of chest pain, shortness of breath, and depression.

On November 3, 1995, Harrison issued his written decision finding that McClanahan was not permanently disabled, relying upon Dr. Moffett's report. With respect to McClanahan's psychological problems, Harrison noted that, "[i]t is difficult to grant a disability for an item when the patient has not attempted to treat the condition." Harrison also found that McClanahan failed to prove that her heart attack or back condition were permanently disabling. McClanahan appealed Harrison's decision.

On December 21, 1995, the Board issued its final case decision again denying McClanahan's application. McClanahan appealed that decision to the circuit court. In her petition for appeal, McClanahan contended that VRS's decision was not supported by substantial evidence, represented an arbitrary and capricious denial of benefits, and constituted an abuse of discretion. On March 15, 1996, McClanahan moved for summary judgment, indicating that there were no disputed facts in the administrative record.

On October 8, 1998, the trial court issued its decision, finding that substantial evidence existed in the record to

support VRS's denial of benefits.  McClanahan appealed to this Court from that decision.

Applying the applicable standards of review to the record made before the VRS, it is clear that although the physicians who treated or examined McClanahan agreed that she sustained a heart attack and back injury and that she suffers from depression, they disagreed concerning the extent of her condition and her disability.  Dr. Moffett opined that McClanahan suffered from mild depression and was not permanently disabled from a psychiatric standpoint.  He opined that with proper medication, she would be able to work within four to six months.  In addition, Dr. Bulle, the cardiologist, found no cardiac basis for McClanahan's dyspnea and opined that she could return to work as of March 2, 1994.  VRS chose to believe the opinions of Drs. Moffett and Bulle and to lend less weight to Dr. Steward's opinion, as it was entitled to do.  See Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) ("The appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.").  Guided by the "substantial evidence" standard of review, we find that the opinions of Drs. Bulle and Moffett, when considered with the entire record, are adequate to support VRS's decision.  Thus, the trial court did not err in affirming VRS's denial of permanent disability retirement benefits to McClanahan.

## Dale

Dale worked for the Buchanan County Health Department from July 1, 1970 through October 14, 1994 as an office service specialist. Her job duties required that she answer telephones, register patients for clinics, pull and file charts for each clinic, schedule appointments, work-up the charts after clinics, pack materials needed for clinics outside of the office, performing billing functions, make bank deposits, and pick up mail.

On December 4, 1995, Dale, then age 45, filed an application with VRS seeking permanent disability retirement benefits. She alleged that neck, back, and head pain, as well as leg weakness prevented her from performing her job. She also alleged that her nerves were "messed up really bad" and that she suffered from frequent panic attacks. Dale revealed that she had sustained the neck, back, and right knee injuries in an October 14, 1994 automobile accident.

In a letter dated November 17, 1995, Dr. D.N. Patel indicated that Dale had been under his care for accidental injury with neck and back pain with "HNP C spine," low back syndrome with chronic lumbar sprain, right knee sprain, severe anxiety neurosis and depression associated with her pain syndrome, and cardiac arrhythmia with angina pectoris. Dr. Patel noted that Dale continued to suffer from severe neck and back pain. He opined

that he did "not anticipate any gainful employment out of her. I believe that she is totally and permanently disabled to work."

In December 1994, Dr. Matthew W. Wood, Jr., a neurosurgeon, examined Dale upon referral from Dr. Patel. Dr. Wood found that Dale had mild degenerative bulges of the C4, C5, and C6 discs. Dale's CT scan of the lumbar spine was normal. Dr. Wood opined that Dale had "typical musculoskeletal pain subsequent to a rear ending accident."

On January 26, 1995, Dr. Wood examined Dale, who complained of constant neck and left arm pain. Dr. Wood counseled Dale on the "benign nature of her pain" and told her that he did not believe she required surgery. He noted that an EMG suggested early carpal tunnel syndrome and he placed Dale in a nocturnal wrist splint and began vitamin B6 for that condition. Dr. Wood recommended that Dale try cervical traction for her neck pain, which he believed would gradually resolve with time.

On January 26, 1996, Dr. Jim C. Brasfield, a neurosurgeon, examined Dale at the request of the Board. Dr. Brasfield reviewed Dale's medical records and prior x-rays. Dr. Brasfield found no evidence of cervical disc rupture and opined that Dale had a cervical strain. Dr. Brasfield stated that Dale's left arm discomfort was due to mild carpal tunnel syndrome. Dr. Brasfield indicated that "[f]rom a purely physical standpoint, she has absolutely no abnormalities that I can discern as being

- 9 -

restrictive or disabling."  Dr. Brasfield suggested that Dale return to work in order to improve her neck symptoms.  He recommended that she undergo a bone scan and possibly a cervical epidural block, and physical therapy, stating that "this would bring the patient back to the full state of work without a significant neck discomfort, and restore what appears to be a very valuable employee to her pre-injury status."

Based upon this medical evidence, the Board denied Dale's application by letter dated February 27, 1996.  Dale appealed that decision.

On appeal, Dale submitted additional medical evidence from Donald W. Hodock, a licensed professional counselor, filing an additional application alleging that her chronic pain had also caused her to suffer severe depression.  In a January 31, 1996 report, Hodock diagnosed Dale as suffering from a generalized anxiety disorder and a dysthymic disorder.  He recommended that she engage in individual counseling and that her status be re-evaluated in six months.  Hodock indicated that "the prognosis for her to do well is fair to poor."

On April 2, 1996, Dale was evaluated by William Brezinski, a licensed psychologist, to obtain information for her application for Social Security disability benefits.  Brezinski diagnosed major depression, moderately severe to severe, post-traumatic stress disorder, moderate, generalized anxiety disorder, moderate,

panic disorder with developing agoraphobia and multiple sequelae from motor vehicle accident by history.  Brezinski opined that Dale was "disabled for all substantial gainful employment at the present time."

On September 23, 1996, Dr. Moffett evaluated Dale at VRS's request.  Dr. Moffett diagnosed Dale as suffering from major depression, panic disorder, and cervical strain.  Dr. Moffett noted that Dale was not on any medication to treat her depression and panic disorder.  Dr. Moffett noted that Dale was not able to work at the current time because she had not received appropriate psychiatric treatment.  He opined that if Dale were provided such treatment, her symptoms would significantly improve and possibly totally remit within six to twelve months.  Dr. Moffett did not believe that Dale was disabled from a psychiatric standpoint and opined that it would be beneficial for her to return to work.

By letter dated October 21, 1996, the Board again denied Dale's application, relying upon Dr. Brasfield's normal neurological examination and Dr. Moffett's psychiatric consultation.  Dale appealed that decision and submitted additional medical evidence from Dr. Joshua P. Sutherland, Jr. Dr. Sutherland indicated that Dale suffered from multiple complex problems including irritable bowel syndrome, reflux esophagitis, severe musculoskeletal disorder associated with the cervical spine, lumbar spine, and right knee, panic disorder with

agoraphobia, post-traumatic migraines, and severe synotenovitis and traumatic arthralgia of the right knee. Sutherland opined that Dale's "overall prognosis is extremely poor" and that "[t]here is a strong indication that the type of injury is a permanent injury and the patient will have to deal with it on both a physical and emotional status."

On April 16, 1997, Harrison conducted a fact finding hearing. At that hearing, Dale described her neck, back, leg and arm symptoms, as well as her emotional difficulties.

On May 5, 1997, Harrison issued his written opinion, concluding that the psychiatric evidence failed to show a permanent disability due to the lack of treatment thus far to address the problem and the fact that Dale believed that her emotional difficulties were largely due to her physical problems. Harrison also found that Dale's physical problems were not permanently disabling, although "aggravating." In rendering his decision, Harrison relied heavily upon the opinions of Drs. Moffett and Brasfield. Dale appealed from Harrison's decision.

On May 22, 1997, VRS issued its final case decision, finding again that Dale had failed to prove that her disability was likely to be permanent. Dale appealed that decision to the circuit court. In her petition for appeal, Dale alleged that VRS's decision was not supported by substantial evidence, represented an arbitrary and capricious denial of benefits, and constituted an

abuse of discretion.  On October 9, 1997, Dale moved for summary judgment.

On October 19, 1998, the trial court issued its written opinion affirming VRS's denial of benefits on the ground that "[t]he record . . . does not reveal a sound or valid reason why [VRS] was not entitled to accept the medical evidence of Dr. Moffett."  Dale appealed from that decision to this Court.

Applying the applicable standard of review to the record made before the VRS, it is clear that although the physicians who treated or examined Dale agreed that she suffers from various physical ailments and emotional problems, they disagreed about the severity of her condition and her disability.  Dr. Moffett opined that although Dale suffered from depression, her condition was treatable and was not permanently disabling from a psychiatric standpoint.  He opined that with proper medication, she would be able to return to full duty within six to twelve months.  In addition, Dr. Brasfield, the neurologist, opined that from a physical standpoint Dale's condition was not permanently disabling and that she should return to work in order to improve her neck symptoms.  VRS chose to believe the opinions of Drs. Moffett and Brasfield and to lend less weight to the opinions of Drs. Patel and Brezinski and the professional counselor, Hodock, as it was entitled to do.  See Wagner Enters., Inc., 12 Va. App. at 894, 407 S.E.2d at 35 ("The appellate court does not retry the facts,

reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.").  Guided by the "substantial evidence" standard of review, we find that the opinions of Drs. Moffett and Brasfield, when considered with the entire record, are adequate to support VRS's decision.  Thus, the trial court did not err in affirming VRS's denial of permanent disability retirement benefits to Dale.

Potter-Meadows

Potter-Meadows worked for Buchanan County Public Schools as a teacher from August 1, 1976 through January 20, 1995.

On June 16, 1995, Potter-Meadows filed an application with VRS seeking permanent disability retirement benefits. Potter-Meadows alleged that bronchial asthma, frequent bronchial pneumonia, high blood pressure, chronic diarrhea, depression, anxiety attacks, headaches, arthritis, memory loss, and a short concentration span prevented her from performing her job.  The medical records submitted by Potter-Meadows from Dr. Vinod Modi indicated that Potter-Meadows suffered from asthmatic bronchitis and chest pains of unknown etiology.  Dr. Modi advised Potter-Meadows to stop smoking.

By letter dated August 30, 1995, the Board denied Potter-Meadows' application, finding that she was not permanently disabled by her bronchial asthma.  Potter-Meadows appealed that decision and submitted additional medical records.

Those records revealed that Potter-Meadows underwent umbilical hernia repair on April 19, 1995. On August 22, 1995, Dr. James Eden, a psychiatrist, evaluated Potter-Meadows. Dr. Eden diagnosed a major affective disorder and generalized anxiety disorder. He opined that her prognosis was poor. On September 5, 1995, Brian E. Warren, a licensed clinical psychologist, evaluated Potter-Meadows for symptoms of depression. Warren opined that Potter-Meadows' "loss of ability to work in many respects have precipitated a major depressive episode." Warren opined that she needed individual and group psychotherapy, as well as chemotherapy to control her symptoms. Warren concluded that Potter-Meadows should be re-evaluated in six to twelve months to assess her progress.

On March 19, 1996, Dr. Moffett evaluated Potter-Meadows at VRS's request. Dr. Moffett noted that Potter-Meadows had a history of asthma and bronchitis and that she had been advised to quit smoking, but that she continued to smoke one and one-half packs of cigarettes per day. Dr. Moffett diagnosed major depression, panic disorder, and asthma. Although Dr. Moffett believed that Potter-Meadows was currently disabled from her job, he opined that she had not had an adequate course of treatment with psychiatric medications. Dr. Moffett opined that "with adequate psychotropic mediation management in combination with psychotherapy, [Potter-Meadows] should be able to return to her

full functioning within the next six to twelve months."  Dr. Moffett did not believe that Potter-Meadows' current disability was a "permanent condition."

By letter dated April 17, 1996, the Board again denied Potter-Meadows' application, relying upon Dr. Moffett's opinion that she needed more intensive treatment and that her disability was not permanently disabling.  Potter-Meadows appealed that decision.

On December 23, 1996, Harrison conducted a fact finding hearing.  At that hearing, Potter-Meadows described her asthma symptoms, as well as her depression symptoms, which she believed prevented her from performing her job.

On February 19, 1997, Harrison issued his written decision, finding that the evidence did not show that any of Potter-Meadows' physical problems were permanently disabling.  With respect to her psychiatric problems, Harrison agreed that Potter-Meadows suffered from depression, but relied upon Dr. Moffett's opinion that her condition, if treated properly, was not permanently disabling. Potter-Meadows appealed that decision, submitting a physical capabilities evaluation from Dr. Lois March.

On March 6, 1997, VRS issued its final case decision, finding that the medical evidence did not prove that Potter-Meadows' incapacity was likely to be permanent.  Potter-Meadows appealed that decision to the circuit court.  In her petition for appeal,

Potter-Meadows alleged that VRS's decision was not supported by substantial evidence, represented an arbitrary and capricious denial of benefits, and constituted an abuse of discretion.  On June 16, 1997, Potter-Meadows moved for summary judgment.

On October 19, 1998, the trial court issued its written opinion affirming VRS's denial of benefits and relying upon its reasoning in the McClanahan and Dale cases.  The trial court determined from its review of the record "that there was credible evidence that might lead a reasonable person to come to the same conclusion that [VRS] reached."  Potter-Meadows appealed from that decision to this Court.

Applying the applicable standards of review to the record made before VRS, it is clear that although the physicians who treated or examined Potter-Meadows agreed that she suffers from various physical ailments and emotional problems, they disagreed concerning the severity of her condition and her disability.  Dr. Moffett opined that although Dale suffered from depression, her condition was treatable and was not permanently disabling from a psychiatric standpoint.  Moreover, from a physical standpoint, no evidence showed that her bronchial asthma and umbilical hernia were permanently disabling.  VRS chose to believe Dr. Moffett's opinion and to lend less weight to the opinions of Drs. Eden, Warren, and March, as it was entitled to do.  See Wagner Enters., Inc., 12 Va. App. at 894, 407 S.E.2d at 35.  Guided by the

"substantial evidence" standard of review, we find that Dr. Moffett's opinion, when considered with the entire record, is adequate to support VRS's decision.  Thus, the trial court did not err in affirming VRS's denial of permanent disability retirement benefits to Potter-Meadows.

## II.

McClanahan, Dale, and Potter-Meadows raise this issue for the first time on appeal.  Contrary to their contention on appeal, nothing in the record indicates that at any time before the Board, VRS, or the trial court did they argue that Code § 51.1-156 is vague and unconstitutionally delegates authority to the Board and private physicians.  Accordingly, Rule 5A:18 bars our consideration of this issue.  See Overhead Door Co. of Norfolk v. Lewis, 29 Va. App. 52, 61-62, 509 S.E.2d 535, 539-40 (1999) (claimant who failed to raise due process argument before workers' compensation commission barred from raising it for first time on appeal); Parnell v. Commonwealth, 15 Va. App. 342, 349, 423 S.E.2d 834, 838 (1992) (defendant who failed to challenge constitutionality of statute in trial court barred from raising that issue on appeal).  Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

The reliance of McClanahan, Dale, and Potter-Meadows upon the Supreme Court's holding in Almond v. Day, 197 Va. 419, 89

S.E.2d 851 (1955), in support of their argument that this Court should consider their constitutional argument for the first time on appeal, is misplaced. In Almond, the Attorney General petitioned for a writ of mandamus pursuant to Code § 8-714 against the State Comptroller "to determine the validity of [a statute] which appropriat[ed] funds for the 'education of orphans of soldiers, sailors and marines' who were citizens of Virginia and were 'killed in action or died, or who were totally and permanently disabled as a result of service during the World War.'" Id. at 420, 89 S.E.2d at 852. Code § 8-714 (now § 8.01-653) requires consideration of constitutional questions on a writ of mandamus, thereby distinguishing Almond from this case.

For the reasons stated, we affirm the trial court's decisions in all three cases.

Affirmed.